IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DANIEL HERRINGTON, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-08-3204 |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 15), and Defendant's cross Motion for Summary Judgment (Document No. 16). After considering the cross motions for summary judgment, the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Court ORDERS,[1] for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and this matter is REMANDED to the Commissioner of the Social Security Administration for further proceedings.

**I.     Introduction**

Plaintiff Daniel Herrington ("Herrington") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final

---

[1] Pursuant to the parties' consent, this case was transferred on December 7, 2009, to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 17.

decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits and supplemental security income benefits. Herrington maintains substantial evidence does not support the Commissioner's decision and that the ALJ: (1) erred in his step three finding that Herrington did not meet Listing 12.04; (2) erred in his assessment of Herrington's residual functional capacity ("RFC"); and (3) erred in his step five finding. The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's decision, and that the ALJ, in determining that Herrington did not meet Listing 12.04 and in determining Herrington's RFC, properly gave more weight to the opinion of the consultative physician who examined Herrington than the medical expert who testified at the hearing.

**II.    Administrative Proceedings**

On August 19, 2004, Herrington applied for disability insurance benefits and supplemental security income benefits, claiming that he has been unable to work since February 1, 2004, as a result of a bipolar disorder, paranoia and depression. (Tr. 70-71, 75, 274P-274W). The Social Security Administration denied his applications at the initial and reconsideration stages. After that, Herrington requested a hearing before an ALJ. The Social Security Administration granted his request and the ALJ, Richard Abrams, held a hearing on June 19, 2007, at which Herrington's claims were considered *de novo*. (Tr. 274-343). On November 30, 2007, the ALJ issued his decision finding Herrington not disabled. (Tr. 21-30).

Herrington sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an

error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 404.970; 20 C.F.R. § 416.1470. After considering Herrington's contentions in light of the applicable regulations and evidence, the Appeals Council concluded that there was no basis upon which to grant Herrington's request for review. (Tr. 5-6A). The ALJ's findings and decision thus became final.

Herrington filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). The parties have filed cross motions for summary judgment (Document Nos. 15 & 16). The appeal is now ripe for ruling.

### III.    Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against

3

the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

### IV.    Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914

F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ found at step one that Herrington had not engaged in substantial gainful activity since February 1, 2004, Herrington's alleged onset date. At step two, the ALJ found that Herrington had the following severe impairment: bipolar disorder. At step three, the ALJ concluded that Herrington did not have an impairment or combination of impairments that met or medically equaled a Listed impairment. At step four, the ALJ determined that Herrington had the residual functional capacity to "perform a full range of work at all exertional levels but with the following nonexertional limitations: simple routine work in a low stress environment with flexible pace and limited interaction with the public or coworkers and avoidance of hazards such as heights, vibration, and dangerous machinery." (Tr. 26). Finally, at step five, the ALJ concluded, after considering Herrington's age, education, work experience, and residual functional capacity, and upon questioning of a vocational expert, that Herrington could perform jobs such as night stocker, laundry worker, and industrial sweeper/cleaner, all of which exist in significant numbers in the local and national economy, and that Herrington was, therefore, not disabled. In this appeal, Herrington challenges the ALJ's determination at step three, the ALJ's RFC determination at step four, and the ALJ's determination at step five that there are jobs he can perform despite his impairments.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain and disability as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren,* 925 F.2d at 126.

**V.   Discussion**

Herrington's first, and primary, issue in this appeal is that the ALJ erred at step three in finding that his bipolar disorder did not meet or equal the requirements of Listing 12.04. According to Herrington, substantial evidence does not support the ALJ's determination at step three, the ALJ erred in his rejection of the expert opinion of Dr. Sternes, a medical expert who testified at the hearing that Herrington met criteria "C" of Listing 12.04.

Under Listing 12.04, affective disorders are presumptively disabling as follows:

12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:
a. Anhedonia or pervasive loss of interest in almost all activities; or
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:
a. Hyperactivity; or
b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or

e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high probability of painful consequences which

are not recognized; or

h. Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

A.      Criteria "A"

Herrington has an affective, bipolar disorder, which was first diagnosed in 2004, when he was 21 years old. He was prescribed Trileptal by Dr. Debra Stokan and went to counseling with Shannon Johnson, a licensed marriage and family therapist and licensed chemical dependency counselor. The notes from his counseling visits with Johnson reveal that Herrington also had issues with substance abuse – smoking marijuana, using cocaine and drinking alcohol. (Tr. 161-207). He also had issues with rage and paranoia, causing Dr. Stokan to prescribe Seroquel, an anti-pschotic, and note that she believed Herrington's paranoia to be "present even without drugs." (Tr. 187).

In June 2004, Herrington was involuntarily admitted to Texas West Oaks Hospital. (Tr. 126-135). He was having severe paranoia, was threatening his family members, had not been taking his medication. Dr. Fallick, the attending psychiatrist, noted both homicidal and assaultive threats and a deterioration of function. (Tr. 132). On the date of his admission, Herrington was oriented x3, his speech rate was average, his mood was "fine", his affect was euthymic (in the normal range), his behavior was calm and cooperative, his thought process was linear, he was having no hallucinations or delusions, his memory was intact, his intelligence was average, and he denied suicidal and homicidal ideations; his judgment, insight and reliability were all, however, noted to be poor. (Tr. 133). Herrington was diagnosed as having a history "of bipolar" and was admitted for mood stabilization and observation. (Tr. 133). Two days later, on June 27, 2004, Herrington was discharged, and instructed to follow-up with his psychiatrist and therapist. (Tr. 134). At the time of his discharge, Herrington was on the same two medications: Trileptal and Seroquel. (Tr. 134).

Less than two weeks later, on July 9, 2004, Herrington was again involuntarily admitted to Texas West Oaks Hospital following a violent episode at home involving destruction of property. (Tr.

9

136-146). At the time of the admission, Herrington was initially labile (unstable or unsteady) and hostile. He was given Risperdal and his mood stabilized. Herrington reported to Dr. Fallick that his sleep and energy were normal, and he denied any "mania." (Tr. 145). Dr. Fallick found Herrington to be oriented x3, his speech was normal, his mood was fine, he was having no hallucinations or delusions, his memory was grossly intact, his intelligence was assessed as average, and he was having no suicidal or homicidal ideations. (Tr. 146). Herrington's judgment was considered by Dr. Fallick to be poor, his insight was improving, and his reliability was fair. (Tr. 146). Herrington was diagnosed as bipolar, and was admitted for safety purposes and to start additional medications. (Tr. 146). Five days later, on July 14, 2004, Herrington was discharged in stable condition. At the time of his discharge, Herrington was prescribed Risperdal and Topamax, which was in addition to the Trileptal and Seroquel that he had been taking at the time of his admission.

On December 1, 2004, Herrington underwent a consultative psychiatric evaluation with Dr. Amina Abdulla, a psychiatrist. (Tr. 206-211). At that evaluation, Herrington reported that he lived alone, but that his mother supported him. He stated that he was constantly worried and paranoid, that angels and God talked to him, that he has both good days and bad days, and that he believed his biggest problem was anger. He also reported that his paranoia has increased over the last four years, that he stopped using drugs about six months ago, and that he doesn't get along with anyone except his mother. Dr. Abdulla found Herrington to be hypertalkative, as well as agitated and upset about his mental condition. He was generally cooperative during the evaluation, but was also edgy and agitated at times. His facial expression was "full range," he used a lot of hand and facial gestures, his mannerisms were good, his eye contact was fair, and his speech was spontaneous, coherent, relevant and logical. There was no evidence of loosening of associations, tangentiality, perservation, or flight

of ideas. He was preoccupied by his illness and admitted to persecution-type delusions, but there was no thought disturbance, and no suicidal or homicidal ideations. His mood was labile and his affect was congruent to his mood. Dr. Abdulla diagnosed Herrington with "Bipolar I Disorder 296.40", with his most recent episode being hypomanic, and "polysubstance abuse 304.8" with his last use being six months prior. Dr. Abdulla assessed Herrington a GAF of 65, and noted that his prognosis was fair to guarded.

According to the record, Herrington was seen from April 2005, though May 2007, by psychiatrist, Dr. Cal K. Cohn, who monitored his condition and altered his medications as needed. Herrington continued to take Trileptal and Seroquel, although the dosages of those medications varied; he was also prescribed at various times Risperdal, Klonopin, and Lithobid. Herrington generally reported to Dr. Cohn that he was doing better and his mood was generally good, but he did have bouts of anxiety (Tr. 242, 263), irritability (Tr. 236), and "manic" symptoms (Tr. 239, 255, 266).

Upon this record, the objective medical evidence clearly supports criteria "A" of Listing 12.04. While Herrington does argue that the objective medical evidence meets criteria "B" as well, Herrington focuses most of his argument in this appeal on criteria "C" and the medical expert's opinion at the administrative hearing that Herrington has had, and continues to need, a highly supportive living arrangement.

    **B.**    **Criteria "C"**

The evidence in the record with respect to whether Herrington met criteria "C" consists of the testimony of Herrington and his mother, and the opinions of two medical experts: (1) the December 15, 2004 opinion of Dr. Lee Wallace, Ph.D., from his review of Herrington's medical

records that Herrington met part "A" of Listing 12.04, did not meet part "B", and there was no evidence in the record "to establish the presence of the 'C' criteria" (Tr. 217-229); and (2) the opinion of Dr. Sternes, who also reviewed Herrington's medical records and who was present and testified at the administrative hearing before the ALJ, opined that Herrington met both the "A" and the "C" criteria of Listing 12.04. Herrington maintains that given the evidence in the record as to the "C" criteria, the ALJ erred in his rejection of Dr. Sternes' opinion and in his finding at step three. Herrington's argument is well taken.

The record shows that from sometime in July 2004 through the date of the administrative hearing, Herrington lived by himself in an apartment and his parents paid all his bills. With respect to that arrangement, Herrington testified at the administrative hearing that he no longer lived with his parents because he poses a danger to them. He also testified that he does know many medications he takes because his mother parcels them out to him; his mother calls him every morning and evening to remind him to take his medication; he doesn't clean or otherwise take care of his apartment, doesn't take out the trash, doesn't buy the groceries, and is only able to make himself a bowl of cereal or heat up something in the microwave. Herrington's mother testified at the hearing that Herrington no longer lives at home because his family is afraid of him. She also testified that she prepares trays of medication for Herrington and stops by his apartment three times a day to make sure he takes his medication and is fed. She also testified that Herrington's condition destabilizes, meaning he becomes shaky and agitated, about twice a week, and becomes severely destabilized about once a month, at which time he comes to stay with her for about a week at a time. She testified that she pays all his bills, and does his grocery shopping. She testified that Herrington can use public transportation at times, but he doesn't pay attention well enough and has called her after ending up in strange places

that he did not intend to go.  She also testified that Herrington cannot even do simple things like peel potatoes.  Both the testimony of Herrington and his mother support the "C" criteria.

Likewise, Dr. Sternes testified that Herrington meets the "C" criteria:

I would see him as meeting the C criteria, Your Honor.  I, I don't believe that he can function effectively without a highly supportive living arrangement.  It's not a living arrangement in terms of one unit with somebody right there, but I don't believe that he can function without his mother checking on him and reminding him, and taking his medicines.  He's had problems with the medications before.  He's on extremely high levels, for instance, of Seroquel.  He's above even the usual upper limits.  And I, I, I think that the problems with social activities where family has to be called away and warned would be a similar kind of circumstance and, and really prevent work in the work place.  It, in one sense it's, it's tough to see this in a young man, but I, I don't believe that this is going to get any better.  I think the only thing that is going to continue is if maintenance of the medication continues, but it's not going to get much better.

(Tr. 329).

The ALJ determined that Herrington did not meet Listing 12.04.  In doing so, the ALJ first rejected Dr. Sternes' opinion:

> The medical expert was of the opinion that the claimant's bipolar I disorder meets the criteria for section 12.04(A).  He opined that he claimant has a moderate to marked degree of limitation in restriction of activities of daily living, a marked degree of limitation in difficulties in maintaining social functioning, and a moderate to marked degree of limitation in difficulties in maintaining concentration, persistence or pace with one or two episodes of decompensation during the relevant time period under consideration.  With regard to the C criteria under section 12.04, the expert witness opined that he meets that requirement in that he had a current history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement.  Thus, Dr. Sternes opinion [is] that the claimant's bipolar I disorder meets the requirements for Section 12.04(A) and (C).  The undersigned rejects this opinion as it is not consistent with the overall objective medical evidence of record or the testimony of the claimant and his mother.  The claimant's living arrangement is not consistent with a highly supportive living arrangement.  The claimant lives independently with assistance from his mother.  On mental status examination in December 2004 the claimant's intelligence was average and his mental status examination was within normal limits with the exception that his mood was labile and he expressed delusional thinking.  He had a GAF of 65 at that

> time (Exhibit 6F). These findings are not consistent with the testimony of the medical expert.

(Tr. 24-25). Having rejected Dr. Sternes' opinion, the ALJ then determined that there was no evidence to support the "C" criteria:

> The undersigned United States Administrative Law Judge has also considered whether the paragraph "C" criteria are satisfied. In this case, the evidence fails to establish the presence of the paragraph "C" criteria. The claimant does not have an inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement. The claimant lives independently with assistance from his mother.

(Tr. 25).

The ALJ's determination that "the evidence fails to establish the presence of the paragraph 'C' criteria" is refuted by the record. As set forth above, both Herrington and his mother testified at the administrative hearing about his living arrangements. While the ALJ did find the testimony of Herrington as to the intensity, persistence and limiting effects of his symptoms not entirely credible, no finding or mention was made by the ALJ that Herrington's living arrangement was anything less than that testified to by him and his mother. In particular, the ALJ did not reject the testimony of Herrington or his mother as to the highly supportive and assistive measures Herrington's mother takes on a daily basis to ensure that Herrington takes his medication and eats. In addition, the ALJ did not reject Dr. Sternes' opinion that the only thing that kept Herrington from de-stabilizing was his mother's oversight. *See* Tr. 331 ("I think that there would be more hospitalizations if mom were not doing what she's doing.").

> In assessing mental impairments, the effects of structured settings are to be considered:
>
> Particularly in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychosocial factors such as placement in a hospital, halfway house, board and care facility, or other environment that provides similar

14

>structure. Highly structured and supportive settings may also be found in your home. Such settings may greatly reduce the mental demands placed on you. With lowered mental demands, overt symptoms and signs of the underlying mental disorder may be minimized. At the same time, however, your ability to function outside of such a structured or supportive setting may not have changed. If your symptomatology is controlled or attenuated by psychosocial factors, we must consider your ability to function outside of such highly structured settings.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F. In addition, with respect to Listing 12.04, a history of and a continued need for a highly *supportive* living arrangement is per se disabling under criteria "C". Here, the evidence of Herrington's living arrangement, including the need therefore and the support and assistance attendant thereto, is inconsistent with the ALJ's finding that Herrington "lives independently with assistance from his mother." Thus, the ALJ's rejection of the medical expert's opinion on this issue and his finding that Herrington did not meet the "C" criteria is not supported by substantial evidence. While the ALJ rejected Dr. Sternes' opinion as to the "C" criteria on the basis that it was inconsistent with a GAF of 65 that was assessed by Dr. Abdulla in December 2004, nowhere did Dr. Abdulla opine on the "C" criteria or Herrington's ability to function outside of the supportive living arrangement he had.

Having considered all the evidence of record, the unrefuted and unchallenged evidence and testimony as to Herrington's living arrangement, and the ALJ's improper and unsupported rejection of Dr. Sternes' opinion as to criteria "C" of Listing 12.04, substantial evidence does not support the ALJ's determination at step three. Accordingly, this case must be remanded for reconsideration at step three.

## VI. Conclusion and Order

Based on the foregoing and the conclusion that the ALJ erred in his step three assessment,

the Court

ORDERS that Plaintiff's Motion for Summary Judgment (Document No. 15) is GRANTED, that Defendant's Motion for Summary Judgment (Document No. 16) is DENIED, and that this matter is REMANDED to the Commissioner of the Social Security Administration for further proceedings, including a reconsideration at step three.

Signed at Houston, Texas, this _____ day of March, 2010.

_____
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DANIEL HERRINGTON, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-08-3204 |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

# FINAL JUDGMENT

For the reasons set forth in the Memorandum and Order entered on this date, it is

ORDERED and ADJUDGED that Plaintiff's Motion for Summary Judgment (Document No. 15) is GRANTED, Defendant's cross Motion for Summary Judgment (Document No. 16) is DENIED, and this matter REMANDED to the Commissioner, pursuant to sentence four, 42 U.S.C. § 405g, for further proceedings.

This is a FINAL JUDGMENT.

Signed at Houston, Texas, this 4th day of March, 2010.

Frances H. Stacy
United States Magistrate Judge